Good morning, Your Honors. May it please the Court, my name is John Smeltzer. I'm a law student at the University of Washington Innocence Project Northwest Clinic, representing Burgell Easter. At this time I'd like to reserve three minutes for rebuttal. Thank you. Your Honors, this petition is about preventing the lifetime denial of liberty from a man whose conviction was based solely on the testimony of one eyewitness, testimony that went virtually unchallenged by his defense counsel. This petition is also about ensuring that Mr. Easter's claim of ineffective assistance of counsel is reviewed under governing federal law. Mr. Easter's petition presents two arguments. First, under Strickland v. Washington, Mr. Easter was denied his constitutional right to effective assistance of counsel by the litany of errors made by his trial lawyer. And second, Mr. Easter has never had his ineffective assistance of counsel claim reviewed under governing federal law because the state court's decision was contrary to and an unreasonable application of this governing federal law. So what test do we, if you're right, what test do we apply in our review? You would apply the Strickland v. Washington test, Your Honor, to reach the ineffective assistance of counsel claim of Mr. Easter. Of that any deference to the state court? The deference, AEDPA 2254D1, says that if the state court does not, applies a rule that is contrary to or an unreasonable application of law, the federal court is then empowered to reach that claim. Further, Mr. Easter, if the federal court does not reach that claim, Mr. Easter will never have had his federal claim, his federal constitutional right to ineffective assistance of counsel, reached by any court and decided under that governing federal law. The state court's decision was contrary to and an unreasonable application of federal law for three reasons. Number one, it applied an actual and substantial prejudice burden in addition to the Strickland analysis. Number two, it evaluated the errors of Mr. Easter's trial counsel, each in isolation, rather than looking at the cumulative impact of counsel's overall performance. And number three, it failed to consider counsel's performance in light of the striking weakness of the state's case, which, again, was based solely on the testimony of one eyewitness. Under Strickland v. Washington, Mr. Easter's counsel's performance was considered deficient and Mr. Easter was prejudiced by this ineffective performance. We have to analyze this case, looking at the striking weakness of the state's case. Again, to reiterate, it's based on the sole testimony of one eyewitness. What should counsel have done? It's hard in the time that I'm allowed to articulate what they should have done, but I think it can be one of the key things, is they should have challenged in any way this sole piece of eyewitness testimony. They failed to do that. I mean, didn't it come out that after she picked your guy out of the photo array, that the cop told her that, yeah, you picked the right person, and that came out before the jury? That did, Your Honor. To keep her, you know, identification. And that's a representative example of what counsel could have done. Counsel had not done any investigation. It failed to investigate the detective officer. But it came out. Granted, Your Honor. But if they had realized that that had come out before, they could have done the necessary preparation to prepare experts and to understand themselves what many studies have shown, that that kind of confirming statement to an eyewitness who's identifying someone from a photomontage instills a sense of confidence in that witness that then is communicated to the jury. And further studies that show that juries, in evaluating the credibility of a witness, look to the confidence above all other factors. She's got an explanation for why she didn't do that. She said in her experience the judges in Washington don't allow that testimony to come in. Well, respectfully, Your Honor, under Rios v. Rocha, a sense of futility is found in that that's not a justification for a decision. That's not a strategic decision. In fact, the Washington law under the Cheatham case is clear that in exactly this kind of situation, where an expert may be able to assist the jury in helping to understand factors that go into evaluating an eyewitness that is beyond the common understanding, this would be precisely the kind of case that an expert testimony would come in. Counsel didn't even know this and failed to raise it at all. And the crux of this was it turned a witness who, at the time, the evening of the event, pointed to the investigative officers, pointed out a white person as the possible suspect and someone who took ten minutes poring over the photomontage of six faces into someone who at trial said, I have no doubt that the black person sitting in front of you is the person who robbed me. And this, again, evaluated in the weakness of the State's case that this was an identification that happened with a hooded robber who was wearing dark glasses. The robbery allegedly happened from behind. When all was said and done, the fact finder looked and said, I believe that eyewitness. That's right, Your Honor. And the reason for that is that Mr. Easter's counsel failed to raise any challenge to that eyewitness. If we look at what happened, which was this case, no challenge to the eyewitness whatsoever on the part of Mr. Easter's counsel. The jury comes and says, we believe this witness. We look at what the, as Judge Silverman was asking, we look at what should have been if defense counsel had properly prepared and properly advocated that had a whole host of things where they could have raised doubts in the jury's mind about this eyewitness identification. That's not the test. Properly is what you learn in law school. When you get here, you have to show that there's a violation of Strickland, which the test isn't properly prepared and properly cross-examined. Right? That's right. If you're referring to the prejudice prong of Strickland, we need to look at the full cumulative impact of counsel's errors. Let me ask you about that point. The cumulative impact, you rely on what? Our Ninth Circuit precedents? Actually, Your Honor, we would rely on Strickland v. Washington itself in its clear holding, which is clearly established federal law. You do agree that we're dealing here not with the Ninth Circuit, but federal law, which means Supreme Court precedents. That's right. Where in Strickland does it indicate that you can use cumulative impact? In the clear holding, in terms of the prejudice prong, it says reasonable Page what? I'm sorry, Your Honor, I don't have the actual page before me. I'm sure my co-counsel can point you to that. Okay. But the quote from the case is, in evaluating the prejudice prong, that reasonable probability that but for counsel's unprofessional errors, plural, the result of the proceeding would have been different. That's the clear holding. The errors, the plural shows, I believe, the full impact of all of counsel's errors together must be evaluated in the prejudice. That clear holding is reinforced, I believe, by the rationale in Strickland, but also by Williams v. Taylor, another Supreme Court case, where the court held that in the prejudice prong, again, one must look at the totality of the circumstances in evaluating counsel's performance. In that case, in the mitigation part of sentencing. Then also, Your Honor, under Himes v. Thompson, this Ninth Circuit Court of Appeals precedent is persuasive on the unreasonable application prong of Strickland. And this court has continuously upheld the cumulative error analysis in its assessment of ineffective assistance claims. Your Honors, I see that my time is up, and I do want to make sure I reserve three minutes for my counsel. Well, you've got a minute and ten for rebuttal, so thank you very much, Mr. Counselor. Thank you. Thank you. Morning. May it please the Court, John Sampson, Assistant Attorney General, representing the Respondent. The district court correctly denied habeas relief because the state court adjudication of Mr. Easter's claim was not contrary to or an unreasonable application of clearly established Federal law. Here the state added something to Strickland. I don't see in your brief that you indicate that that makes any difference in your standard of review that you set out. What do we do with the Cooper case? Well, Your Honor, I would submit that the state court did not add anything to Strickland. What the state court said was, first, in analyzing the ineffective assistance counsel claim Which Supreme Court are you talking about? The Washington Supreme Court, Your Honor. Okay. In the opinion which is found in excerpts of record specifically on this claim, 170 through 173, the state Supreme Court said that Mr. Easter argues his counsel was ineffective. Mr. Easter must show the counsel's representation fell below an objective standard of reasonableness, the first prong of Strickland. Then they said that he must also show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would be different, the prejudice prong of Strickland. The state court correctly set forth the two prongs of Strickland. What they then did, also correctly, the state Supreme Court said that because this is a personal restraint petition, under our state law, to obtain collateral relief under our state law, you have to show actual prejudice. So they did not add a third prong to Strickland and they did not apply an improper prejudice under Strickland. What they said was, you have to show ineffective assistance to counsel and to obtain relief, you have to meet our standards under state law. Well, what is different for that from the Cooper case, aside from it's Oregon rather than Washington? There they added something to it and we held we're not going to give any deference to the state opinion. How do you distinguish Cooper? The way I distinguish it is this is, it is not in addition to the federal prong, it is simply the state court's own standards for collateral relief and what the U.S. Supreme Court said in Holland v. Jackson is that the courts should not, the federal courts should not be so ready to attribute error to the state court opinions because they cite to their own state standards for collateral review. Well, Justice O'Connor made a pretty clear statement that if you add something that's inconsistent with Strickland, then it's a contrary to Strickland and not to be applied. You've added something, not you, the Washington Supreme Court, sorry, added something to Strickland and we said in Cooper following that, if you do that, then we don't give you the deference that we would otherwise and we treat it as if there's no state deference. And I'm having difficulty seeing why that isn't the way we're going to have to review this case. I would respectfully disagree that they added something to Strickland. It would be the same as saying that under 2254d, Congress has added something to Strickland. They have not. Congress has said, in addition to showing the constitutional error, if you want to obtain collateral relief in the federal court, you have to also meet this additional requirement of showing unreasonable application. Well, look at Cooper. Strickland established two-pronged tests in effective citizenship counsel based upon reasonable probability standards. Accordingly, because the Oregon court used a more probable-than-not standard. Now, isn't that what happened here? There was an additional standard that was developed which was inconsistent with Strickland? No, Your Honor. What the court did, and there are at least two examples that I have written down in my notes, excerpts of Record 171, the court said, in addressing the challenge to the identification, counsel's failure to challenge the identification, quote, but as to none of these claims, does Mr. Easter demonstrate a reasonable probability that the outcome of the trial would have been different? Then the court says, and he also fails to show actual prejudice. So what the court did was they applied Strickland and the court also applied the state law. So if he doesn't do that, the commissioner didn't do that with all the claims, unfortunately. No. And in the end, he says his very last paragraph, in sum, Mr. Easter does not make a prima facie showing that he was actually and substantially prejudiced by ineffective representation. He did use that one. In the final paragraph, so it's not clear at all what he did here. Your Honor, and I would submit that taking isolated portions of an opinion to say that the court supplanted Strickland with an actual prejudice standard is in violation of what the U.S. Supreme Court said that the courts should do under Holland v. Jackson. Another example is Go ahead and answer Judge Peisen and then I have a question. I would say another example is the court in the challenge to the bankruptcy impeachment issue didn't even reach the prejudice issue. They simply said counsel was not deficient. The representation was not deficient. So to say that that is an unreasonable application  because there's also language about actual prejudice does not give proper deference. I'm sorry, Your Honor. Why wouldn't a reasonable lawyer call an eyewitness expert in a case like this? As Ms. Samuel stated in her affidavit which is found in excerpts of record That it wouldn't come in? That she wouldn't be able to get in? In her prior experience, she had seen this evidence excluded. Mr. Smeltzer says there's a case that says it comes in. That was approximately four years later that case came down and actually what that case did the Cheatham case said was it affirmed the exclusion of the evidence the unreliability evidence and it said here is the standard for determining in future cases whether such evidence should come in or not applying evidence rule 702 standard in determining whether such evidence came in. But the Cheatham case was four years later. The Barker case which is cited by the Commissioner in excerpts of record 173 upheld the exclusion of such evidence and this court has repeatedly affirmed the exclusion of evidence similar to this in both direct appeals and in habeas cases. This court in fact Dr. Loftus who was the expert in this case her and I can't remember if it's the husband or the wife there's two of them this court has said that exclusion of such evidence is valid under the Constitution. So counsel exercising the limited resources that she had available to her made a reasonable decision not to pursue such expert witness testimony because in her experience such testimony would be excluded and instead she focused on challenging the victim's own identification on cross-examination and the detective statements and this court has said that challenging identification through cross-examination is a proper method for challenging that identification counsel provided reasonable performance. So even if this court were to find that 2254d does not apply the petition still fails because Mr. Easter cannot show both deficient representation and proof. Was she restricted in any way in the scope of her cross-examination of those two witnesses? No, Your Honor. In fact, the excerpt of the record only contained one of the pages regarding the detective's cross the following few pages after that counsel inquired of him a great deal about the need for reliability in identifications and the harm that can be done by making a comment such as you picked the right one. So she was not restricted in her cross-examination. She aggressively challenged the identification and she argued that the jury found that the victim was telling the truth they accepted the victim's story and the jury is the finder of fact that in fact the state trial judge in ruling on the identification found that the detective's comment did not taint the victim's identification and that's excerpt of record 49 Didn't taint the out-of-court identification? That's correct. How could it not taint the in-court identification? The standard is whether it made the subsequent identification unduly suggestive and whether it made it unreliable. That simple statement you picked the right one is not enough to satisfy that burden. So the petitioner has not shown that that statement alone would be enough to exclude the in-court identification but even if it did, there was still the prior out-of-court identification that was admitted, the photo montage was admitted, that would have been sufficient and the jury still would have convicted him. The petitioner has not shown a reasonable probability that the result the verdict would be different and therefore he has failed in his claim. Let me ask one question about cumulative error. You heard counsel argue as he stated in his brief that he believes that cumulative error occurs out of the language of Strickland. Clearly what we say about cumulative error for our case in the Ninth Circuit don't deal with the issue. And I'd like to have you give a response as to whether you read Strickland allowing cumulative errors and break it into two phases. The first prong of whether there was ineffective assistance and second on prejudice. What's your position? My position is that Strickland does not clearly establish in the holding cumulative error for either prong. On what? For either prong. For either prong. The language cited is if you wish to use it for cumulative error analysis is very vague and I would submit that under Lockyer versus Andrade and under the remaining Supreme Court cases taking a holding and stretching it that far to say that it incorporates an accumulative error is an incorrect stretching of what Strickland actually held. What Strickland said was that you have to look at the errors in the totality of the circumstances to determine whether counsel's errors would have a reasonable probability that it would have changed the outcome of the trial. In other words, don't just look at the errors in isolation. Look at what the prosecution presented. Look at what counsel did good. It's not a cumulative analysis. It is. So if there's 10 errors, you don't add them all up for a sum total? You take each one individually? That is a reasonable interpretation and that is a reasonable application of Strickland. Because what the court has never said, the U.S. Supreme Court has never said you add them all up. One major fallacy in adding them all up is not every alleged error is an actual error. Again, the challenge to the failure to impeach the witness with bankruptcy paperwork, the state court found that wasn't even an error. How can you accumulate such an error when it's not even an error? Well, I think where it comes up is suppose none of these 10 are in and of themselves of sufficient magnitude to show ineffective assistance, but if there's 40 of them and you put them all together, it shows ineffective assistance. I think that's the theory. What's your response to that? Well, first, that even if you put them all together, it's not enough to show one, the counsel's representation fell below a level of reasonable competence, and two, that it could have changed the outcome of the trial. And it's not you're taking all these alleged deficiencies, which they have not even shown, Mr. Easter has not even shown, fall below a reasonable level of competence and saying group them all together and then let's see. You know, it looks what counsel did was really bad, but in fact... Take it over to the prejudice part. Suppose there are five errors and they are errors, but they don't raise themselves to ineffective assistance, but the five errors are sufficient that there is some prejudice. Can you lump them together for the prejudice prong? I would respectfully submit that Strickland does not require that. It is not a holding in the U.S. Supreme Court, and therefore the State courts allege failure to do that. There's not even a holding in the Ninth Circuit on that issue. But your position is that you can't lump them even together even for the prejudice prong? Not under, for purposes of 2254D's analysis, Your Honor. Okay. If I understand you, you're saying that 0 plus 0 could equal 0, but you're not saying that if you look at the totality of the circumstances, it's not inconceivable that when the whole mix is analyzed together, it's possible that whatever happened constituted prejudice. Do I read you right? You don't just look at there are ten errors, therefore it's reversed. What you're saying is, I think, you have to look at what the strength of the evidence was. You have to look at what corrective measures were taken by the trial judge. You have to look at the whole package and you analyze the thing and its totality. Yes, Your Honor. For instance, the counsel did not investigate or did not obtain an expert on eyewitness identification testimony. What counsel did do was properly challenge the witnesses on cross-examination. You can't take that alleged error and then the alleged error and failure to get bankruptcy records and the failure to seek an alibi witness and say, okay, you have ten errors here, automatic prejudice. What you have to do is you look at what they actually did right. But it's not inconceivable that errors could converge and cause harm where individually they don't meet up, right? I... No, never mind. That's a rhetorical question. Thanks. You're out of time. Thank you, Your Honor. Thank you very much. We went over with Mr. Sampson, so we'll give three minutes in rebuttal. Good morning, Your Honors. My name is Matthew Picaglia. I'm also a student with the Innocence Project Northwest at the University of Washington, representing Petitioner Verdell Easter. Your Honors, in the short time that I have available, I'd like to emphasize our argument that the State court decision was objectively unreasonable in its failure to consider the totality of the evidence that Mr. Easter has presented regarding the deficiencies of his counsel. The necessity for doing that, Your Honors, as Mr. Smeltzer has pointed out, originates in the Strickland holding but is informed by the Supreme Court of the United States' own analysis applying the Strickland test. For instance, in Williams v. Taylor, the Court found prejudice because the State court had failed to weigh the totality of the mitigation evidence which had been omitted at the sentencing phase of the defendant's trial. This Court in Harris v. Wood considered a case in which it was able to identify 11 serious deficiencies on the part of counsel and concluded that because, due to the plethora and gravity of the deficiencies, the proceeding was rendered fundamentally unfair. Among those deficiencies are several which are identical to those that Mr. Easter identifies in this case. The failure to investigate and prepare adequately for trial. The failure to consult adequately with their client. The failure to object to evidence. The failure to propose to or accept to jury instructions. The failure in the closing argument in the guilt phase. All of those factors are present in Mr. Easter's case as well, Your Honors. The most serious oversight of Mr. Easter's counsel was their failure, as we've indicated, to challenge the sole eyewitness testimony that was presented against him and which was the basis of his conviction. That error encompasses a number of other deficiencies, including the failure to identify and investigate and to, excuse me, interview key witnesses, including the officers who responded to the 911 call, Detective Wada, who conducted the photomontage identification. In addition, counsel, as we've indicated, failed to consult with an expert on eyewitness identification who could have identified a range of errors, a range, excuse me, of dangers inherent in the eyewitness identification process and highlighted those errors for the jury. The respondent distinguishes State v. Cheatham on the grounds that the Court didn't admit the expert testimony in that case, but that was the case where the witness specifically indicated that she paid particular attention to her assailant's features because she knew that she would later be called upon to identify. I see that my time has run out, Your Honors, and I'll close. Your Honors, the Supreme Court in Strickland made clear that the purpose of the Sixth Amendment guarantee is to ensure that criminal defendants receive a fair trial. As a result of his counsel's failure to prepare adequately to investigate his case and to advocate effectively on behalf of their client, Mr. Easter was denied a fair trial. We ask that this Court grant relief in the form of the writ of habeas corpus. Thank you. The case just argued has done a terrific job, especially by this side. Congratulations, and thank you for taking the case. Thank you to Mr. Sampson. The case just argued is submitted. Good morning. Good morning.
judges: Wallace, Silverman, Paez